[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 03, 2001
THOMAS K. KAHN
CLERK

-----------------------------------------

Nos. 99-10197 and 99-10198

-----------------------------------------

D. C. Docket No. 99-00583-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANOOCHER NOSRATI-SHAMLOO,

Defendant-Appellant.

-----------------------------------------------------------------
Appeals from the United States District Court
for the Southern District of Florida
-----------------------------------------------------------------
**(July 3, 2001)**

Before EDMONDSON, WILSON and MAGILL*, Circuit Judges.

_____

* Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

PER CURIAM:

Appellant-Defendant, MANOOCHER NOSRATI SHAMLOO,

("Defendant") appeals his conviction and sentence by the district court for

knowingly and willfully stealing, taking or abstracting mail from or out of the

United States Mail in violation of 18 U.S.C. 1708.  Because we see no abuse of

discretion by the district court in admitting evidence, nor clear error in determining

the amount of loss for sentencing purposes, Defendant's conviction and sentence

are affirmed.


Background


Defendant was observed by a number of residents of the Kendall

neighborhood in the southwest part of Miami removing mail from several

mailboxes in the neighborhood.  The residents who had mail removed from their

mail boxes received credit cards in the mail for which they had not applied, were

contacted by credit card companies concerning accounts they had never opened

and were informed by the credit bureaus that accounts had been opened in their

names for which they had not applied.  At trial, three witnesses testified that they

saw Defendant take mail out of mailboxes in the neighborhood.  Evidence was

presented that residents whose mail had been taken by Defendant had credit cards issued to them that they had never requested. Evidence was also presented that Defendant had two prior convictions for possession of stolen mail.

Defendant was found guilty by the jury. The sentencing judge determined that the amount of loss in this case was $43,000.00, the amount of the combined credit limits on the cards obtained through the theft of the mail, and sentenced Defendant accordingly.

Discussion

A district court's determination regarding the amount of loss for sentencing purposes is reviewed for clear error. See United States v. Daniels, 148 F.3d 1260, 1261 (11th Cir. 1998).

The chief issue in this appeal is whether the sentencing court erred in fixing the amount of intended loss from the theft of credit card applications out of the United States Mail (in violation of 18 U.S.C. § 1708) at $43,000.00 -- the total amount of the credit limits on the cards applied for by Defendant -- when the actual charges made against the cards were less, the evidence was circumstantial and unclear about whether defendant knew the actual credit limits on the cards, and

when no evidence shows that Defendant's intent was something other than to make use of the full line of credit. The answer is "No."[1]

In United States v. Dominguez, 109 F.3d 675 (11th Cir. 1997), we left open the question of whether the amount of loss attributable to fraudulently obtained credit cards could be calculated as the full amount of the credit line when there is no direct evidence that Defendant knew the amount of the credit limits. Id. at 677 n.5. Today, we decide that once a defendant has gained access to a certain credit line by fraudulently applying for credit cards, a district court does not err in determining the amount of the intended loss as the total line of credit to which Defendant could have access, especially when Defendant presents no evidence that he did not intend to utilize all of the credit available on the cards. See United States v. Sowels, 998 F.2d 249, 250 (5th Cir. 1993) (where court found the total amount of the credit card limits was a plausible measure of intended loss when there was no specific finding that defendant knew what the limits were).

In this case, Defendant objected to the Pre-Sentence Investigation Report's determination that the amount of loss was $43,000.00; and therefore the government had the burden at sentencing of proving the loss for sentencing. See

---

[1]The district court's rulings on admission of evidence regarding credit cards transactions, and Defendant's prior convictions for possession of stolen mail are reviewed for abuse of discretion and affirmed. The evidence was relevant to establishing Defendant's motive and intent for removing mail from several mailboxes in the neighborhood.

United States v. Bernardine, 73 F.3d 1078, 1080 (11th Cir. 1996).  If the intended

loss due to the offense is greater than the loss actually caused, the court may use

the amount of the intended loss for sentencing purposes.  See U.S. Sentencing

Guidelines Manuel §2F1.1, cmt. n.7 (1997) ("[I]f an intended loss that the

defendant was attempting to inflict can be determined, this figure will be used if it

is greater than the actual loss."); U.S. Sentencing Guidelines Manuel §2B1.1, cmt.

n.2 (1997) ("Where the offense involved making a fraudulent loan or credit card

application, or other unlawful conduct involving a loan or credit card, the loss is to

be determined under the principles set forth in the Commentary to §2F1.1 (Fraud

and Deceit).").  A defendant's intent is often difficult to prove and often must be

inferred from circumstantial evidence.  See United States v. Ethridge, 948 F.2d

1215, 1217 (11th Cir. 1991) (recognizing that intent must often be proved by

circumstantial evidence allowing the factfinder to infer intent); Hill v. Kemp, 833

F.2d 927, 930 (11th Cir. 1987) (approving jury instruction that "[i]ntent may be

shown in many ways... It may be inferred from the proven circumstances or by acts

and conduct...").

In this case, the government presented evidence at the sentencing hearing

that Defendant had stolen mail with the intent of applying for and using credit

cards and that the credit cards for which he applied had an aggregate credit limit of

$43,000.00.[2] Defendant presented no evidence that tended to show that he did not intend to use all of the credit available on the cards. The evidence presented allowed the district judge to determine for sentencing purposes that Defendant intended to utilize all of the credit available on the cards thus intending a loss of $43,000.00. Cf. United States v. Oates, 122 F.3d 222, 226 n.5 (5th Cir. 1997) (saying that one who fraudulently endorses a financial instrument intends to gain access to the funds it represents and that it is the "access to funds [that] is dispositive" in determining the amount of loss). We conclude that the district court did not clearly err in fixing the amount of loss at $43,000.00.

Conclusion

The district court did not clearly err in determining the amount of intended loss by Defendant was $43,000.00.

AFFIRMED.

---

[2]The government presented other evidence that might strengthen the argument that Defendant intended to utilize all of the credit available on the cards. Defendant had three previous convictions for similar offenses and therefore has a sophisticated knowledge of the credit card industry, had made a number of charges on some of the cards and had requested a PIN for one of the cards. Bernardine, 73 F.3d at 1080-81 (the sentencing court can consider relevant evidence without regard to its admissibility under the rules of evidence as long as the information is sufficiently reliable to support its accuracy).