UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

ABBASS OLANREWAJU MUHAMMED,
a/k/a Johnny Nykian, a/k/a Tyrone
Williams,
             *Defendant-Appellant.*

No. 03-4818

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-03-101)

Submitted: August 18, 2004

Decided: September 3, 2004

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

M. Timothy Porterfield, Charlotte, North Carolina, for Appellant.
Anna Mills Wagoner, United States Attorney, Angela H. Miller,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Abbass Olanrewaju Muhammed pled guilty to credit card fraud, 18 U.S.C. § 1029(a)(3) (2000), making a false statement on a passport application, 18 U.S.C.A. § 1542 (West Supp. 2004), and related offenses, and received a sentence of forty-four months imprisonment. Muhammed appeals his sentence, contending that the district court erred in determining the intended loss by using the maximum credit carried on each stolen credit card or account number, *U.S. Sentencing Guidelines Manual* § 2B1.1 (2002). We affirm.

Muhammed, a citizen of Nigeria illegally in the United States, was arrested in February 2003 after an investigation into false passport applications he had submitted. A few days later, his apartment was broken into by an unknown person, and his sister moved his belongings to a storage unit. In March 2003, two search warrants were executed on Muhammed's luggage in the storage unit. Agents found forty-nine rounds of ammunition, ninety-four unauthorized access devices, and nineteen unauthorized identification documents. Most, if not all, of the access devices were credit card account numbers listed in seven notebooks (or "ledgers").

Muhammed subsequently pled guilty to two counts of making a false statement on a passport application, 18 U.S.C.A. § 1542 (Counts One and Three); two counts of false use and representation of a Social Security number, 42 U.S.C. § 408(a)(7)(B) (2000) (Counts Two and Four); one count of using fraudulent identification, 18 U.S.C.A. § 1028(a)(7) (West Supp. 2004) (Count Five); one count of possessing unauthorized access devices, 18 U.S.C. § 1029(a)(3) (2000) (Count Six); one count of possessing fraudulent identification documents, 18 U.S.C.A. § 1028(a)(3) (West Supp. 2004) (Count Seven).*

---

*Under the terms of the plea agreement, the government agreed not to oppose dismissal of Count Eight, possession of ammunition by an illegal alien, 18 U.S.C. § 922(g)(5) (2000).

Muhammed had used thirteen of the credit card accounts and caused an actual loss of $44,688.62. The probation officer recommended that the intended loss should be determined by adding the actual loss to the credit maximum for each of the unused credit accounts and using a maximum of $500 for thirteen accounts with no listed maximum and for eight American Express accounts, which had unlimited credit. The total recommended intended loss was $206,020. Muhammed contested the probation officer's use of the credit maximum for certain accounts to estimate the intended loss. He argued that only the loss should be used to determine his offense level. He also asserted that the notebooks, or ledgers, belonged to a co-conspirator named Jimmy Kottun.

At the first sentencing hearing, the government introduced evidence of an additional twenty-five credit accounts, only four of which had a stated credit limit. The district court determined that the maximum credit amount for each unused credit account should be treated as the intended loss for that card and that $500 was a reasonable intended loss for the cards (or account numbers) with no credit limit. The court found a total intended loss of $220,720. With respect to Kottun, the court held that it would accept the government's statement that it had no information about Kottun and could neither support nor contradict Muhammed's statement about him.

Muhammed's allocution to the court caused the district court to question the validity of his guilty plea. The hearing was continued and the issues resolved at a second hearing. The district court then sentenced Muhammed to concurrent sentences of forty-four months on Counts One through Four and Count Six, and to the statutory maximum of thirty-six months on Counts Five and Seven.

In this appeal, Muhammed contends that the district court erred in determining the amount of intended loss. We review de novo the district court's legal interpretation of the term "loss" as used in the sentencing guidelines. *United States v. Castner*, 50 F.3d 1267, 1274 (4th Cir. 1995). The district court's determination of the amount of loss is a factual matter reviewed for clear error. *Id.* Guideline section 2B1.1(a) provides a base offense level of 6 for crimes involving fraud or deceit, with an enhancement under subsection (b) that is determined by the amount of loss suffered as a result of the fraud. The

amount of loss is the greater of the actual loss or the intended loss. USSG § 2B1.1, comment. (n.2(A)). "Intended loss" is defined as "the pecuniary harm that was intended to result from the offense . . . and . . . includes intended pecuniary harm that would have been impossible or unlikely to occur. . . ." USSG § 2B1.1, comment. (n.2(A)(ii)). Consequently, the intended loss amount may be used, "even if this exceeds the amount of loss actually possible, or likely to occur, as a result of the defendant's conduct." *United States v. Miller*, 316 F.3d 495, 502 (4th Cir. 2003). When the loss must be estimated, "[t]he court need only make a reasonable estimate of the loss." USSG § 2B1.1, comment. (n.2(C)). The 2002 *Guidelines Manual* provides that, for unauthorized access devices, other than telecommunications instruments, the loss is not less than $500 per access device. USSG § 2B1.1, comment. (n.2(F)(i)).

Muhammed argues that the court erred in finding that he intended to use every credit card account when he used only thirteen of them, and that the district court's assumption that he would have used the credit available on each account to the maximum extent possible was lacking in factual support. He argues that defense counsel's estimate of a loss between $70,000 and $120,000 was more reasonable.

Three circuits have upheld use of the credit limit for unused unauthorized access devices to determine the intended loss. *See United States v. Manoocher Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001) (defendant presented no evidence that he did not intend to use all the credit available on cards applied for fraudulently); *United States v. Egemonye*, 62 F.3d 425, 429 (1st Cir. 1995) (defendant instructed runners to procure cash at or near credit limits with credit cards purchased in sting operation); *United States v. Sowels*, 998 F.2d 249, 251 (5th Cir. 1993) (aggregate amount of unused balances of stolen credit cards considered because victims were exposed to that amount of loss). In Muhammed's case, although he used only thirteen of approximately ninety-four stolen credit card account numbers before his arrest, he exceeded the credit limit on five cards. This evidence supports the district court's conclusion that the remaining victims were exposed to potential losses exceeding the credit limit for each account. We conclude that the district court's decision to use the aggregate credit limit for the unused accounts with a known credit limit was not clearly erroneous.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*