[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11835
Non-Argument Calendar

_____

D. C. Docket No. 03-00212-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HIKMET UYANIKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 14, 2006)**

Before TJOFLAT, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

In April 2003, a Northern District of Georgia grand jury returned an

indictment charging appellant in Counts 1 through 61 with possession with intent

unlawfully to use five or more false identification documents, in violation of 18 U.S.C. § 1028(a)(3) and (f), in Counts 62 through 94 with using, without lawful authority, the social security numbers of other persons with the intent to commit the felony of applying for and obtaining credit cards, in violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 1028(a)(7), (b)(1)(A) and (D),[1] and in Count 95 with possession of document-making implements with the intent to use them for the production of false identification documents, in violation of 18 U.S.C. § 1028(a)(5). The indictment also included a forfeiture count brought under 18 U.S.C. § 982(a)(2) to obtain for the Government forfeiture of the moneys produced by the offenses alleged in Counts 1 through 95 of the indictment.

On November 13, 2003, appellant pled guilty to all counts. On March 1, 2005, after the court's probation office had submitted a presentence report ("PSI") to the parties and the district court, appellant appeared before the court for sentencing. According to the PSI, appellant manufactured at least 61 fraudulent credit cards under social security numbers of other individuals and used the cards via fraudulent companies he set up to funnel money to himself. The credit limit on the cards totaled in excess of $1.73 million, and the losses the credit card companies suffered amounted to $315, 818. Appellant paid these companies at

---

[1] These counts were based principally on losses sustained by Sears National Bank, Chase Bank, and Citibank, in the sums of $92,992, $38,867, and $64,989, respectively.

least the minimum payments required to be made on the credit cards they issued, so they continued to raise the card limits. This pattern, the PSI explained, is known as a "bust-out." The card holder obtains increased credit limits and then, when he can charge no more, charges the limit and vanishes.

The PSI fixed appellant's total offense level at 23 as follows. The base offense level was 6, pursuant to U.S.S.G. § 2B1.1. Sixteen levels were added because the total loss was between $1million but less than $2 million, in that the maximum credit limit of all cards exceeded $1.73 million. Two levels were added pursuant to U.S.S.G. § 2B1.(b)(8)(C), and two were added pursuant to U.S.S.G. § 2B1.1(b)(9)(A) and (C)(ii). The PSI deducted three levels for acceptance of responsibility under U.S.S.G. § 3E11(a) and (b). With a criminal history category of I, the offense level of 23 yielded a Guidelines sentence range that called for a prison sentence of 46 to 57 months.

Appellant objected to the PSI's calculation of the amount of losses, contending among other things that such amount should be limited to what was actually charged on the cards, $315, 818, not the maximum credit limit. The Government countered with the argument that the losses should be based on the total of the cards' maximum credit limits, which exceeded $1.73, since that was the intended amount of the "bust-out" scheme. After it heard the testimony of the

3

Government's expert, an FBI agent, the court agreed. The Government also asked the court to depart upwardly from the PSI's offense level of 23 by four levels because appellant had stolen and used the identities of 73 persons. The court granted the request, finding that 75 people, in addition to 10 financial institutions, had been harmed by appellant's conduct. The enhanced total offense level of 27, with a criminal history category of I, yielded a new sentence range of 70 to 87 months.

Addressing the matter of restitution, as noted above the PSI indicated that the financial institutions suffered losses totaling $315,818. Appellant argued that he should be held accountable only for the losses sustained via his commission of the offenses alleged in Counts 62 through 94 of the indictment, observing that Counts 1 through 61 charged him merely with possession, not the use, of the false cards. The court overruled his objection, and ordered restitution in the sum of the losses, $315,818, as part of appellant's overall sentence. The court did not include a fine as part of appellant's overall sentence, although it had the statutory authority to impose a fine. See 18 U.S.C. §§ 3551(b) and 3571.

The Guidelines prescribed that appellant serve a prison sentence ranging from 70 to 87 months on each count. The court chose the low end of that range, and ordered appellant incarcerated for 70 months on each count, the terms to run

4

concurrently, to be followed by a three-year term of supervised release. He now appeals his sentences – both his prison sentences and the restitution order.

Appellant contends, first, that the court erred in enhancing his offense level pursuant to U.S.S.G. § 2B1.1(b) based on an intended loss of in excess of $1.73 million, the maximum credit limits of the cards. We find no error. The Government presented credible evidence of the "bust-out" scheme, so the court had ample evidence before it to arrive at the challenged figure. This case is materially indistinguishable from United States v. Manoocher Nosrati-Shamloo, 255 F.3d 1290 (11th Cir. 2001).

Appellant contends, next, that the court erred in increasing his offense level by four levels under U.S.S.G. § 2B1.1 because there was no evidence that any individual suffered damage to his or her credit rating. Section 2B1.1 addresses financial harm. Although appellant is correct that there is no evidence that the persons whose identities he used suffered any financial harm, other circuits have applied the enhancement in circumstances such as those in this case. See e.g., United States v. Collier, 413 F.3d 858, 860 (8th Cir. 2005) (the district court "properly considered the substantial harm to the victims of Collier's crimes, recognizing that Collier stole the identity of one victim twice and noting that the Guidelines do not adequately address the pain and misery experienced by those

5

whose identities are stolen"); <u>United States v. Karro</u>, 257 F.3d 112, 121-122 (2d Cir. 2001) (the district court "properly identified the risk of non-monetary harm associated with identity theft to be a permissible basis for an upward departure"). Here, it is undisputed that appellant's scheme produced 78 identifiable victims, and the court found on competent evidence that 75 individuals in addition to 10 financial institutions were harmed. In sum, we reject as meritless appellant's second ground for the vacation of his prison sentences.

Appellant's third ground is that the court erred in ordering restitution for the offenses charged in Counts 1 through 61 because those counts only charged him with possession of the fraudulent credit cards. Appellant concedes that the court properly ordered restitution on Counts 62 through 94 in the sum of $196,849. The Government agrees with appellant – that the court erred in ordering restitution on Counts 1 through 61 – citing our decision in <u>United States v. Cobbs</u>, 957 F.2d 1555 (11th Cir. 1992), and the Fifth Circuit's decision in <u>United States v. Mancillas</u>, 172 F.3d 341, 343 (5th Cir. 1999). Given this concession, we vacate the restitution order and remand the case with the instruction that restitution be limited to Counts 62 through 94.

Since the district court's authority to impose restitution is now limited to those counts, it may wish to reconsider its overall sentencing package. We

therefore vacate appellant's sentences in their entirety and remand the case for further proceedings not inconsistent herewith.

**VACATED and REMANDED**, with instructions.