[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 06-11766
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 1, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00050-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM JOSHUA BOYD STETSON,

Defendant-Appellant.

----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Florida

----------------------------------------------------------------

**(November 1, 2006)**

Before EDMONDSON, Chief Judge, TJOFLAT and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant William Joshua Boyd Stetson appeals his split

sentence of five months' imprisonment and five months' home detention for

conspiracy to commit fraud and fraud in connection with one or more counterfeit

credit cards, in violation of 18 U.S.C. §§ 371, 1029(a)(1), (b)(2) and (c) and 2. No reversible error has been shown; we affirm.

Stetson's appeal turns on the district court's determination of the amount of loss for sentencing purposes. Under U.S.S.G. § 2B1.1(b)(1), if a loss is more than $30,000 but $70,000 or less, the base offense level is increased by 6 levels; if the loss is more than $10,000 but $30,000 or less, the base offense level is increased by 4. The district court set the amount of intended loss from the theft and fraudulent use of credit card data at $42,942. The actual loss from the use of the data was $10,763.43. Stetson argues that the district court engaged in rank speculation and committed clear error when it calculated the amount of intended loss.

We review a district court's amount of loss determination for clear error. United States v. Nostari-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001). "If the intended loss due to the offense is greater than the loss actually caused, the court may use the amount of the intended loss for sentencing purposes." Id.; see U.S.S.G. § 2B1.1, cmt. n.3(A) ("loss is the greater of actual loss or intended loss."). The government bears the burden of proving the amount of loss by a preponderance of the evidence, see United States v. Cover, 199 F.3d 1270, 1276 (11th Cir. 2000); and this burden must be satisfied with "reliable and specific

evidence." United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) (quotation omitted). The district court may not speculate about facts which would permit a more severe sentence under the guidelines, but an intended loss calculation need not be made with precision. See United States v. Dominguez, 109 F.3d 675, 676 (11th Cir. 1997). And the sentencing guidelines commentary provides expressly that the district court "need only make a reasonable estimate of the loss;" U.S.S.G. 2B1.1 cmt. n. 3(C); because the sentencing judge is uniquely positioned to assess the evidence and estimate loss, that estimate is entitled to appropriate deference. Id.

The PSI had calculated intended loss at $147,000 based on the probation officer's calculation of the aggregate credit limit applicable to the fraudulently obtained accounts. In Nostari-Shamloo, 255 F.3d at 1291, we said that a district court commits no error when it determines the amount of intended loss based on the total line of credit the defendant could access, especially when the defendant presents no evidence of a contrary intent. Based on testimony of Stetson's co-defendant, the district court concluded that an amount less than the credit limit -- an amount that would be reached within a billing cycle or before the card is cancelled -- was reasonable. Based on the maximum actual use of two cards, the district court estimated that $3900 was a good indication of how much a card

could be used. Using 11 cards as the number of cards on which data was stolen,[1] the district court calculated the intended loss at $42,942.

Stetson argues that the district court's calculations were mere "guesstimates." Stetson points to testimony that his co-defendant intended only $1500 use on each card, and never more than $3,000. But that testimony was contradicted by the actual use of $3,897 and $3,902 on two cards, and by the co-defendant's statements that he kept no records and would use some cards until they went "dead." With respect to six cards that had no actual use, Stetson argues no intended use should apply because the co-defendant testified that those cards were destroyed and that the encoder used to create the cards was thrown away.[2] But testimony also showed that, if the cards were destroyed, the co-defendant retained the data which would allow him to recreate the cards. After hearing the testimony and viewing the evidence, the district court found it unreasonable to say the intended loss on the unused cards was zero; the cards were taken, copied and encoded so that they could be used.

---

[1] Stetson argues that the record supports a conclusion only that 10 cards were created. Even if the number of accounts was 10, using the $3,900 per card calculated by the district court, the intended loss would be $39,000 and still above the guideline threshold for a six-level increase.

[2] The co-defendant admitted to retaining two cards; he explained that he intended to buy a plasma television with one and a digital camera with the other. Stetson maintains that those two cards support no more than $3000 of intended loss.

We see no clear error in the district court's loss calculation for sentencing purposes.  The district court based its calculation on reliable and specific evidence, including testimony form Stetson's co-defendant and from an investigating officer. Given inconsistencies in the co-defendant's testimony, the district court discredited testimony that the co-defendant abandoned his intent to use the other cards.  Although the evidence presented was not conclusive about the exact amount of intended loss, the Sentencing Guidelines require only a reasonable estimate.  U.S.S.G. § 2B1.1, cmt n.3(C).

**AFFIRMED.**