[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 3, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15377
Non-Argument Calendar

_____

D. C. Docket No. 08-00028-CR-ORL-31KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCUS ROGOZINSKI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 3, 2009)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Marcus Rogozinski appeals pro se his convictions for conspiracy to commit

bank fraud, 18 U.S.C. § 371, bank fraud, id. §§ 2, 1344, and passing a fictitious instrument, id. §§ 2, 514(a)(2).  Rogozinski challenges the fairness of his trial based on prosecutorial misconduct, the admission of a copy of a check as evidence, the decision to consider the amount of the instrument at sentencing, and the reasonableness of his sentence.  We affirm on these four issues and decline to review a fifth issue regarding the effectiveness of trial counsel.

## I. BACKGROUND

On December 14, 2007, Rogozinski entered an Orlando, Florida, branch of the Bank of America to deposit a check for $10,901,508.17 issued purportedly by the United States Treasury and made payable to the Marcus Rogozinski Sovran Trust.  Amy Turner, a bank employee, asked Rogozinski why the amount had not been wired to his account, which was the regular practice for a large transaction. Rogozinski explained that he traveled internationally for the Department of Homeland Security and had received the check from a citizen of Cambodia, where it was difficult to wire money, in partial satisfaction of a lawsuit.  Rogozinski assured Turner that the check was valid and his attorneys in South Florida had verified that the money was available.

The bank placed an automatic hold on the check, and Turner told Rogozinski that the money would be available on December 26.  Turner warned Rogozinski

that, even if the money was available, he would be liable if he withdrew any money and the check was later returned as fraudulent. Rogozinski reassured Turner about the validity of the check. Turner wrote Rogozinski's account number on the back of the check, completed a deposit slip for Rogozinski, and took the two documents to a teller. Turner wrote a note on the check and told the teller that she suspected the check was fraudulent. Turner returned to Rogozinski with a deposit slip and a receipt stating he could access $5000 the next day.

Rogozinski returned to the bank on December 26, 2007. Turner told Rogozinski that the money was available, cautioned him against withdrawing any money in case the check returned as fraudulent, and advised him to wait two additional days. Rogozinski left the bank empty handed.

Late in the afternoon on Friday, December 28, 2007, Rogozinski came to the bank. Turner told Rogozinski that another hold had been placed on the check. Rogozinski stated that his attorneys had advised him that the funds could be released and that he needed to wire 4.5 million dollars. Turner told Rogozinski that she would contact the Treasury on Monday and, if the funds were available, she would release 4.5 million dollars.

After Rogozinski left the bank, Turner sent an email about the fraudulent check to the chief security officer for Bank of America, Roy Gonzaque. Gonzaque

3

inspected the check and noticed that the check did not state it was issued by the United States Treasury; had not been printed on the correct stock; and had not been signed by the issuer. After he spoke to his supervisor, Gonzaque placed an extended hold on Rogozinski's account and notified the Secret Service about the check.

Rogozinski returned to the bank on December 31, 2007. Turner told Rogozinski that she could not release the 4.5 million dollars and agents of the Secret Service wanted to speak with him. Rogozinski agreed to speak to the agents and said he had received the check from Vira Hong in November 2007 to compensate Rogozinski because he contracted cat scratch fever while babysitting her cat ten years earlier. Rogozinski stated that he had met Hong during a conference and a short time later agreed to babysit her cat. Rogozinski also stated that he was a federal air marshal and had contacted an attorney, who told him the check was valid.

Rogozinski agreed to visit Agent Roy Dotson later at his office. During this meeting, Rogozinski told Agent Dotson that Hong sent money for investment purposes. Rogozinski wrote a statement in which he stated that Hong sent the money to invest because she felt guilty that she had failed to pay Rogozinski 25 million dollars as she had promised to compensate for the cat scratch fever. At

Agent Dotson's request, Rogozinski called Hong.

During the call, which was recorded by the Secret Service, both Rogozinski and Hong made inculpatory statements. Rogozinski told Hong that the amount of the check would be available in about a week, and she responded eagerly to Rogozinski's offer to share the money. Rogozinski asked Hong if she thought she could "get more of these types of documents[]" because "[t]his one is working[,]" and Hong responded positively. Rogozinski next asked "where all the money [was] coming from[,]" and Hong replied her "trust fund," but Hong admitted that all of her bank accounts were depleted. Rogozinski suggested that Hong "maybe . . . do another one, if this one is going [sic] work all right[,]" and Hong replied, "Yeah. Yeah, that would be great." Rogozinski explained how he had processed the check at Bank of America and Hong responded "Wow, that's wonderful. That's the best news I ever heard." Rogozinski later told Hong that they could "go over this stuff in a few days" and he again asked Hong to "just see if [she] [could] get more and send [him] another check, if [she] want[ed] to, and [they] [could] try doing it again."

Rogozinski gave Agent Dotson the envelope that Hong used to send the check. Inside the envelope, the agent found a piece of perforated paper used by Versacheck, a computer software program used to create checks. The paper stated

that the form check had been made payable to Rogozinski's account for the Sovran Trust.

After the Secret Service recorded a series of phone calls between Rogozinski and Hong, Hong traveled to Orlando to meet Rogozinski. Rogozinski agreed to wear an audio recorder provided by the Secret Service. At the end of the meeting, the Secret Service arrested Rogozinski and Hong.

Rogozinski was charged in a three-count indictment for conspiracy to commit bank fraud, 18 U.S.C. § 371, bank fraud, id. §§ 2, 1344, and passing a fictitious instrument, id. §§ 2, 514(a)(2). At trial, before the government called its first witness, the district court commented that "from time to time I'll be standing up and walking around back here because I've got a bad back and I just can't sit very long. So just ignore me, but I wanted to go ahead and explain that to you."

Rogozinski denied any wrongdoing and stated that he had assisted the government to build a case against Hong. Rogozinski testified that he had known Hong for many years and contracted cat scratch fever while caring for Hong's cat. Rogozinski testified that Hong was wealthy, yet never had compensated him for his illness, then she felt obliged when he contacted her in 2007 to assist him in an investment opportunity. Rogozinski stated that he had asked Turner if he could verify the validity of the check without depositing it, he deposited the check at

6

Turner's suggestion, and he had not planned to withdraw any money until the bank approved the check.

On cross-examination, the prosecutor asked Rogozinski about his case of cat scratch fever. Rogozinski could not recall the name of the treating physician and stated that he did not bring his medical records because he "didn't think this would be coming up." The prosecutor accused Rogozinski of concocting the illness and remarked to Rogozinski that the records "don't exist." When the prosecutor repeated his remark, Rogozinski replied, "I swear they do." The prosecutor argued in closing that Rogozinski's testimony was incredible:

> How, members of the jury, can you explain and how can it be explained that if the reason for this private lawsuit was the cat scratch fever disease, Marcus Rogozinski does not even remember the name of the doctor? Marcus Rogozinski doesn't even remember when it happened. That is the basis to receive a substantial windfall, but he doesn't remember that. He doesn't even have the medical records to prove it.

While the jury was deliberating, the district court stated that it would need to adjourn early to attend a physical therapy session. The jury later found Rogozinski guilty of all three charges.

The presentence investigation report provided a base offense level of 7, United States Sentencing Guideline § 2B1.1(a)(1), and increased it by 20 levels based on an intended loss of $10.9 million, id. § 2B1.1(b)(1)(K). With a criminal

7

history of I, the report provided a sentencing range between 70 and 87 months of imprisonment. Rogozinski objected to several statements of fact in the report.

At the sentencing hearing, defense counsel stated that Rogozinski did not object to the facts or scoring in the report, but Rogozinski made three arguments about his trial. First, Rogozinski argued that "[b]ecause [the check] was dropped by the U.S. government, to bring it back at this point would be judicial estoppel." Second, Rogozinski complained that the prosecutor "destroyed" Rogozinski's "credibility . . . before the jury" by questioning him about the cat scratch fever, and Rogozinski offered into evidence medical records that stated he was treated for symptoms "probably secondary to cat scratch disease." Third, Rogozinski argued that the district court should not have excluded the check under Federal Rule of Evidence 1003 because it was a duplicate that "wasn't the same color" and "was barely legible." Rogozinski commented that "even the jury laughed when they saw it[.]"

The district court said it had considered the sentencing factors and found that the offense was serious because Rogozinski had attempted to defraud a bank and the government of more than 10 million dollars. The court found that Rogozinski's federal service "in this case" was "an aggravating factor because" Rogozinski committed his crime while employed by the government and "violated

8

his trust as a federal law enforcement officer." After mentioning other sentencing factors, the district court stated that Rogozinski "appear[ed] as though he's part of the tax protester anarchist movement" and his "filings in this case would tend to corroborate that[.]" The district court also mentioned that Rogozinski had expressed "no remorse" and the court expressed its belief that Rogozinski "remains a threat to the public." The court stated that "the public needs protection from this gentleman and from those like-minded people who are attempting to defraud their own government through these nonsensical applications and attempts to defraud not only the government, but the banks in the process." Based on those observations, the district court found "no mitigating factors under 3553(a) that would cause me to sentence him to a sentence below the guidelines." The court sentenced Rogozinski to three concurrent terms of 72 months of imprisonment followed by three years of supervised release.

## II. STANDARDS OF REVIEW

Most of Rogozinski's arguments are subject to review for plain error. To satisfy that standard, a defendant must establish an error, that is plain, and that affects substantial rights. United States v. Evans, 478 F.3d 1332, 1338 (11th Cir. 2007). We then may exercise our discretion to recognize the error, but only if it "'seriously affect[s] the fairness, integrity, or public reputation of judicial

proceedings.'" Id. (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).

Our standards of review for the remaining issues are also deferential. We review for clear error the calculation of the amount of loss. United States v. Nosrati-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001). We review the reasonableness of a sentence for abuse of discretion. Gall v. United States, 128 S. Ct. 586, 594, 596–97 (2007). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

### III. DISCUSSION

Rogozinski challenges his conviction on four grounds that we address below. Rogozinski also argues that his trial counsel was ineffective, but we decline to address that argument because "the district court did not entertain [Rogozinski's] claim nor develop a factual record." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). Claims of ineffective assistance may be pursued in a collateral motion. See 28 U.S.C. § 2255.

*A. Rogozinski Received a Fair Trial.*

Rogozinski argues for the first time on appeal that the district court sua

sponte should have declared a mistrial or ordered a new trial based on prosecutorial misconduct, but we disagree. Rogozinski argues that the prosecutor engaged in misconduct by cross-examining Rogozinski about whether he had suffered from cat scratch fever and arguing in closing that Rogozinski had not, but Rogozinski put his credibility at issue by testifying and the prosecutor did not respond with foul blows. The prosecutor was entitled to cross-examine Rogozinski about the name of his treating physician and any medical records to corroborate his testimony that he had suffered so debilitating an illness that Hong would have promised him millions of dollars in compensation. See United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009). The prosecutor also was allowed during closing argument to cast doubt on Rogozinski's credibility and the plausibility of his defense. See United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984) ("'The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating, and applying the evidence . . . .'" and a prosecutor may "urge[] the jury to draw inferences and conclusions from the evidence produced at trial.") (quoting United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978)). The prosecutor did not shift the burden of proof to Rogozinski and, even if the questions or remarks had been improper, the instruction by the district court about the burden of proof ameliorated the prejudicial effect of those statements. Id. at 662. The district court

11

did not plainly err by failing to order a new trial or declare a mistrial.

Rogozinski also erroneously complains that he was deprived of a fair trial because the district court, while suffering from back pain, failed to control the conduct of the prosecutor. Although the judge mentioned that his back required him to walk occasionally behind the bench and caused him to shorten deliberations one afternoon, the record does not suggest that these instances impaired the ability of the court to complete its duties or affected its impartiality. The district court did not plainly err.

*B. The Check Was Admissible.*

Rogozinski argues that the district court violated a rule of evidence by admitting what Rogozinski contends was a "copy so poor the jury laughed at it[,]" but we disagree. "A duplicate [of a document] is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Although the copy of the check is blurred slightly, it is not of such poor quality that it was unfair to admit into evidence. The district court did not commit any error, much less plain error, by admitting the check into evidence.

*C. The District Court Correctly Considered The Amount of the Check at Sentencing.*

Rogozinski argues that the district court was estopped from considering the face value of the check at sentencing, but we disagree. A district court may invoke judicial estoppel "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Stephens v. Tolbert, 471 F.3d 1173, 1177 (11th Cir. 2006). There was no need to disregard the value of the check in the absence of evidence that the government assumed inconsistent positions about the value of the check or the crimes Rogozinski committed when he deposited the check.

The district court did not clearly err by considering the amount of the check at sentencing. Rogozinski was responsible for the amount of the check. A defendant can be held accountable for the loss he intended, even if the intended loss is not "realistically possible." United States v. Wai-Keung, 115 F.3d 874, 877 (11th Cir. 1997). Rogozinski deposited the check at the Bank of America, assured the bank employee that the check was valid, and returned on several occasions to withdraw money.

*D. Rogozinski's Sentence is Reasonable.*

Rogozinski argues for the first time on appeal that his sentence was unreasonable because the district court took into account that he had violated the

13

tax code, an offense of which he was not indicted or convicted, but his argument is not supported by the record. Although the district court expressed its belief during sentencing that Rogozinski was "part of the tax protester anarchist movement," the court adopted the findings of the presentence investigation report, which calculated the advisory guideline range based on Rogozinski's convictions for conspiracy, bank fraud, and passing a fictitious instrument. The district court stated it had considered the sentencing range as advisory, and had concluded that a sentence within the guidelines was necessary to punish Rogozinski, deter similar future crimes by Rogozinski and others, and protect the public. Rogozinski's sentence is reasonable.

## IV. CONCLUSION

Rogozinski's judgment of conviction is **AFFIRMED**.