[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12992
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00345-CC-AJB-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT B. SURLES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 21, 2011)

Before BARKETT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Robert Surles appeals the 120-month sentence that followed his conviction

for one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §

1349, and fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343. He challenges his sentence on two grounds. Specifically, he argues (1) that the district court erred in calculating the amount of loss for purposes of determining the appropriate Sentencing Guidelines range; and (2) that the district court imposed a substantively unreasonable sentence because it created an unjustifiable disparity between Surles and his co-conspirators, Howard Sperling and Edgar Beaudreault. Surles was hired to acquire financing for the construction of a juvenile detention facility in Colorado.[1] During the project, he joined with his co-conspirators to defraud Cornell Corrections ("Cornell") by failing to place nearly $13,000,000 into an inaccessible escrow account. Instead, they deposited the funds into an account they could pillage at any time. After review, we affirm Surles's sentence.

## I.

We first address Surles's contention that the district court erred in determining the offense level for his crime because it incorrectly calculated the

---

[1] Cornell Corrections ("Cornell") was hired to build the facility. They sub-contracted the work to Western Comfort ("Western"), a local construction company. The majority of Western's fee was to be placed in an escrow account that would be released upon completion of the project. Accordingly, Western needed to obtain a line of credit to purchase the necessary materials for construction. After failing to obtain financing itself, Western contacted Surles for assistance. He and his co-conspirators forged documents to show the necessary financing, which led Cornell to release the nearly $13,000,000 into what it thought was an escrow account.

loss amount. His argument is based on the distinction between actual loss and intended loss, and possible credits against loss. The actual loss was approximately $5,400,000 because Cornell ultimately recovered more than $5,000,000, and because more than $2,000,000 was given to Western to spend on construction materials. Surles argues that he did not intend for there to be a $10,000,000 loss and his subjective intent ultimately controls the intended-loss calculation. He maintains that he believed a brother of one of his co-conspirator's had guaranteed to cover any losses and, therefore, he could not possess the requisite intent to deplete the account of more than $10,000,000. Accordingly, Surles argues the intended loss must be less than the actual loss, rendering his 20-level offense increase invalid.

"We review the district court's loss determination for clear error, and review questions of law under the sentencing guidelines *de novo*." *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006) (per curiam) (citations omitted).

For certain crimes, such as wire fraud and conspiracy to commit wire fraud, the Sentencing Guidelines require an increased offense level based on the loss suffered. *See* U.S.S.G. § 2B1.1(b)(1). Offenses involving more that $2,500,000 but less than $7,000,000 result in an offense level increase of 18 points, while offenses resulting in a loss between $7,000,001 and $20,000,000 carry a 20-point

3

offense level enhancement. *Id*. Loss is calculated by determining the "greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.3(A). Actual loss includes the "reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss "(I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur . . ." *Id.* at cmt. n.3(A)(i), (ii). "[W]hen a sentencing court is determining the proper punishment for a defendant's fraud, the court uses the reasonable mathematical limit of his scheme, rather than his concrete result. A criminal pays the price for the ambition of his acts, not their thoroughness." *United States v. Patterson*, 595 F.3d 1324, 1327 (11th Cir. 2010).

Here, Surles cannot succeed on his intent-based claim because he does not present any argument that demonstrates that the district court committed clear error.[2] He and his co-conspirators had unfettered access to the account, and he

---

[2] Surles also makes a veiled argument that the intended loss, whatever the amount, should be credited the recovered $5,000,000. Under U.S.S.G. § 2B1.1, the loss amount should be reduced by "[t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant . . . to the victim before the offense was detected[,]" and "[i]n a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." *Id*. at cmt. n.3(E)(i),(ii).

Surles cannot be credited under either of these provisions. First, the funds were not returned to Cornell prior to its detection of the offense. Second, the $5,000,000 cannot be characterized as "collateral pledged or otherwise provided by the defendant." Accordingly, any credit-based argument for purposes of calculating intended loss is irrelevant.

4

presents no compelling evidence to indicate that they intended to siphon off a lesser amount. *United States v. Manoocher Nosrati-Shamloo*, 255 F.3d 1290 (11th Cir. 2001) (per curiam), is instructive. There, we concluded that "once a defendant has gained access to a certain credit line by fraudulently applying for credit cards, a district court does not err in determining the amount of the intended loss as the total line of credit to which Defendant could have access . . . ." *Id*. at 1291. That is especially true "when [the defendant] presents no evidence that he did not intend to utilize all of the credit available on the cards." *Id*. Similarly, because Surles and his co-conspirators secured and maintained complete access to the account, the district court did not commit clear error in concluding they intended to deprive Cornell of the entire amount available to them, absent compelling evidence to the contrary. The district court saw no such evidence, and neither do we.

The fact remains that the conspirators maintained the ability to deprive Cornell, regardless of whether Surles believed his co-conspirator's brother would ultimately replenish any disturbed amount. At the very least, Cornell was subjected to substantial risk that the "loans" would not be repaid. Such a risk is sufficient to establish that Surles intended to cause the loss of the entire amount. *See United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993) (per curiam)

("Proof that the defendant intentionally induced a bank to unknowingly subject itself to the risk of default is sufficient to establish that the defendant intended to cause a loss."). Accordingly, we affirm the district court's 20-point offense-level increase.

## II.

Surles next challenges the substantive reasonableness of his sentence.

> We review the sentence imposed by the district court for reasonableness. *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005) (per curiam). The review is deferential, and a defendant challenging his sentence bears the burden of showing that his sentence is unreasonable. *Id*. at 788. At sentencing, the district court must consider the factors listed in 18 U.S.C. § 3553(a), which include avoiding unwarranted sentencing disparities between similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). However, there cannot be an unwarranted sentencing disparity between defendants that are not similarly situated. *United States v. Spoerke*, 568 F.3d 1236, 1252 (11th Cir. 2009). In other words, "'[a] well-founded claim of disparity . . . assumes that apples are being compared to apples.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Mateo-Espejo*, 426 F.3d 508, 514 (1st Cir. 2005)).

*United States v. Black*, 11th Cir. 2011, __ F. App'x __, (No. 10-13461, Mar. 31, 2011) (per curiam). Moreover, while we do not necessarily presume that a sentence within the Guidelines is reasonable, we ordinarily expect that it will be. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).

Here, Surles focuses on the disparity between his sentence and those of Sperling and Beaudreault, who received 61- and 37-month sentences, respectively. He fails to appreciate the obvious differences between the them. Surles's co-conspirators both pleaded guilty and provided substantial assistance to the government, including testifying against Surles. Surles pleaded not guilty, and a jury convicted him after a two-week trial. As such, Surles and his co-conspirators were not similarly situated. *See Docampo*, 573 F.3d at 1101 (concluding that defendants who cooperate with the government and plead guilty are not similarly situation to defendants who do not assist and go to trial). Ultimately, his sentence within the properly calculated Guideline range was not substantively unreasonable.

## III.

Based on the foregoing discussion, we affirm Surles's sentence.

**AFFIRMED.**