[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10884
Non-Argument Calendar

_____

D.C. Docket Nos. 4:16-cr-00358-LGW-GRS-1; 4:17-cr-00011-WYM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAYNARD SANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 27, 2018)

Before MARCUS, ROSENBAUM and JULIE CARNES, Circuit Judges.

PER CURIAM:

Maynard Sanders appeals his 186-month total sentence, imposed following

his convictions on several counts of bank fraud, aggravated identity theft, and aiding

and abetting theft by a bank employee.  Sanders's offense conduct consisted of a

scheme to withdraw money from victims' bank accounts without their permission,

using fraudulently-obtained personal information and the assistance of two bank tellers, whom he recruited to help make the withdrawals. At sentencing, the district court calculated his intended loss amount at $480,000, which represented the total funds in a victim's bank account. Over the course of the scheme, Sanders and his coconspirators withdrew a total of about $20,000. On appeal, Sanders argues that the district court clearly erred in calculating his intended loss at $480,000, and in applying a resulting 12-level increase to his total offense level. After careful review, we affirm.

We review the district court's determination about the amount of loss under the Sentencing Guidelines for clear error. United States v. Hoffman-Vaile, 568 F.3d 1335, 1340 (11th Cir. 2009). Clear error review is deferential, and we will only reverse when we are left with a definite and firm conviction that a mistake has been committed. United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004). When a defendant challenges the factual basis of his sentence, the government must establish the disputed fact by a preponderance of the evidence, using "reliable and specific evidence." United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) (quotation omitted).

Section 2B1.1 of the November 2016 Guidelines provides for a 12-level increase for a fraud offense involving between $250,000 and $550,000 in losses. U.S.S.G. § 2B1.1(b)(1)(G) (2016). The application notes clarify that the "loss is the

2

greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." Id., comment. (n.3(A)(i)). "Intended loss," on the other hand, means the pecuniary harm that was intended to result from the offense, including pecuniary harm "that would have been impossible or unlikely to occur." Id., comment. (n.3(A)(ii)).

The Guidelines do not require a precise determination of loss, and a court "need only make a reasonable estimate of the loss, given the available information." United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011). (quotation omitted). When considering the loss caused by fraudulent conduct, "the nature of the individual scheme must determine the correct way to measure the loss." United States v. Woodard, 459 F.3d 1078, 1087 (11th Cir. 2006). Because district courts are in a unique position to evaluate the evidence relevant to a loss determination, their determinations are entitled to appropriate deference. United States v. Bradley, 644 F.3d 1213, 1290 (11th Cir. 2011). The court is able to make factual findings concerning its loss determination based on evidence heard during trial or during the sentencing hearing. Id. A court "may not speculate about the existence of a fact that would result in a higher sentence." Barrington, 648 F.3d at 1197. Nevertheless, because a defendant's intent is often difficult to prove, in many cases, it "must be

3

inferred from circumstantial evidence." United States v. Nosrati-Shamloo, 255 F.3d 1290, 1292 (11th Cir. 2001).

We've held that a defendant "pays the price for the ambition of his acts, not their thoroughness." United States v. Patterson, 595 F.3d 1324, 1327 (11th Cir. 2010). We've also determined, for example, that a district court did not clearly err in determining the intended loss to be the total line of credit available to the defendant who had fraudulently gained access to credit cards, "especially when [the] Defendant present[ed] no evidence" that he did not intend to utilize all of the credit available on the cards. Nosrati-Shamloo, 255 F.3d at 1291. Similarly, in United States v. Grant, 431 F.3d 760 (11th Cir. 2005), we held that:

> [W]hen an individual possesses a stolen check, or a photocopy of a stolen check, for the purpose of counterfeiting, the district court does not clearly err when it uses the full face value of that stolen check in making a reasonable calculation of the intended loss. Although a district court cannot equate the full face value of stolen checks with intended loss as a matter of law in every case, it can still find a defendant intended to utilize the full face value of stolen checks. Where the Government presents evidence indicating the defendant intended to utilize the full face value of the checks, and the defendant fails to present countervailing evidence, a district court is especially justified in including the checks' full face value in its intended loss calculation.

Id. at 765. And in United States v. Willis, 560 F.3d 1246, 1250–51 (11th Cir. 2009), we upheld the district court's finding that the defendant intended to pursue the maximum possible benefits from her 20 fraudulent applications for Federal Emergency Management Agency ("FEMA") aid, although she obtained far less.

4

Finally, it's true that the district court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," but this concern is irrelevant if the defendants are not similarly situated. United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting 18 U.S.C. § 3553(a)(6)). That is to say, a well-founded claim of disparity "assumes that apples are being compared to apples." Id. (quotation omitted).

Here, the district court did not clearly err in determining that Sanders's intended loss was between $250,000 and $550,000. While the trial record did not contain any direct evidence of Sanders' intent -- the main issue on appeal -- the district court's finding was supported by sufficient circumstantial evidence. Nosrati-Shamloo, 255 F.3d at 1292. For example, the facts showed that Sanders was aware of the large balance of several victims' accounts, including the $480,000 that belonged to Shirley Ray, an elderly woman living out of state. Sanders obtained all of the personal identification information necessary to drain the entire $480,000 balance through a series of withdrawals, just like the defendant in Nosrati-Shamloo had access to the victim's entire line of credit. Id. at 1291. While Sanders claims that this and other cases are distinguishable because he was limited to making small withdrawals through third-party tellers, we've held that a defendant "pays the price for the ambition of his acts, not their thoroughness." Patterson, 595 F.3d at 1327.

5

The same goes for Sanders' argument that the tellers withdrew from the conspiracy nearly a year prior to Sanders's arrest. Indeed, if anything, this argument is undermined by his repeated attempts to bring them back into the scheme when they tried to leave. Further, Sanders' withdrawals of slightly less than the $3,000 maximum, along with his targeting of elderly, wealthy victims, circumstantially shows that he was trying to avoid detection while obtaining as much money as possible over time. Lastly, Sanders's disparity argument concerning the sentences for the bank tellers -- whose offense levels were based on the $20,000 actual loss -- is meritless, since the two tellers pled guilty and were not leaders in the scheme. In other words, Sanders's case and that of the two tellers is simply not an apples-to-apples comparison. Docampo, 573 F.3d at 1101.

In short, nothing in the record leads to the "definite and firm conviction" that the district court made a mistake in concluding that Sanders had access to the entire $480,000 balance of Ray's account, and that he intended to take that much money. Rodriguez-Lopez, 363 F.3d at 1137; Nosrati-Shamloo, 255 F.3d at 1291; Grant, 431 F.3d at 765; Willis, 560 F.3d at 1250-51. As we've said, the district court, with its unique position to evaluate the evidence at trial and sentencing, is entitled to deference and is only required to make a reasonable estimate based on the information available. Barrington, 648 F.3d at 1197; Bradley, 644 F.3d at 1290. Accordingly, we affirm his total sentence.

6

**AFFIRMED**.

7