[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 29, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-12268

_____

D. C. Docket No. 03-00275-CR-J-20TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRYL ARLENE GRANT, a.k.a. Mack Hardy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 29, 2005)

Before BLACK, WILSON and COX, Circuit Judges.

BLACK, Circuit Judge:

Darryl Arlene Grant appeals his sentence for producing and possessing

counterfeit corporate checks, in violation of 18 U.S.C. §§ 2 and 514.  On appeal,

he argues the district court clearly erred by calculating an intended loss of

$230,009.54 and imposing a 12-level sentence enhancement under U.S.S.G. § 2B1.1(b)(1)(G).[1]  Specifically, he contends the district court's intended loss calculation should not have included the $182,899.54 total face value of photocopies of stolen corporate checks found in his possession.  We affirm.

## I.  BACKGROUND

The facts are not in dispute.  We briefly address them to place the legal issue in context.  Over the course of several months in 2003, Grant and a number of unindicted coconspirators participated in identity theft, bank fraud, theft from the United States mails, and manufacturing and negotiating counterfeit checks. Grant's counsel described his client's role in the criminal enterprise as follows:

> [T]his case was about obtaining legitimate checks and specifically a photocopy of a legitimate check and going to a home computer with check writing software and inserting legitimate routing numbers and a legitimate business name into your computer on your check writing software and reproducing checks that you could then . . . go out and attempt to negotiate.
>
>        . . . .

---

[1] All Guidelines citations are to the 2002 edition of the Guidelines.

[The photocopied checks] are -- I guess the best word is templates. You take the body of the check. You reproduce it and then you put in whatever amount you want to put in and attempt to negotiate it . . . .

A federal grand jury indicted Grant for producing and possessing counterfeit corporate checks, in violation of 18 U.S.C. §§ 2 and 514. He pled guilty to the charge.

At his sentencing hearing, Grant argued the district court's intended loss calculation should not include the full face value of four photocopied checks found in his apartment. Specifically, he objected to consideration of (1) photocopies of two corporate checks from Professional Escrow Services, which totaled $177,899.54, and (2) photocopies of two corporate checks from Colony Insurance, which totaled $5000. After considering the parties' arguments, the district court overruled Grant's objection, finding "the intended loss [was] the face amount of the checks that could have actually been reproduced on the computer because that's how much the banks would have said were in there to

3

cover them."  Accordingly, the district court imposed a 12-level sentence enhancement under § 2B1.1(b)(1)(G).[2]

## II.  STANDARD OF REVIEW

We review for clear error the district court's determination regarding the amount of loss under the Guidelines.  *United States v. Manoocher Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001).

---

[2] Under § 2B1.1(b)(1)(G), a twelve-level enhancement can be assessed for intended losses of more than $200,000.  The $182,899.54 total face value of the photocopied checks, plus the $47,110 uncontested intended loss amount, brought Grant's total intended loss calculation to $230,009.54.

III.  DISCUSSION

The only issue on appeal is whether a district court clearly errs by including the full face value of photocopied corporate checks in its calculation of intended loss.[3]  This issue is one of first impression in our circuit.

Section 2B1.1 of the Guidelines provides a base offense level of six for crimes involving altered or counterfeit instruments, and includes an enhancement based on the dollar value of the loss.  "Loss" is defined as the greater of "actual loss" or "intended loss," where the actual loss includes "the reasonably foreseeable pecuniary harm that resulted from the offense," and intended loss "(I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur."  U.S.S.G. § 2B1.1 cmt. n.2(A)(i), (ii).  In calculating the amount of loss, the district court "need only make a reasonable estimate of the loss."  *Id.* § 2B1.1 cmt. n.2(C).  Although a "'district court must not speculate concerning the existence of a fact

___

[3] In his October 7, 2005, initial appeal brief, Grant for the first time asserted the district court violated his Sixth Amendment right to trial by jury when it made extra-verdict factual findings in a mandatory Guidelines system.  Grant urged us to vacate his sentence and remand for resentencing in light of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).  On August 2, 2005, however, Grant submitted a supplemental authority brief in which he conceded his inability to establish plain error under *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005).  Additionally, he expressly waived his Sixth Amendment claim out of "fear[] that a remand of this case under an advisory guidelines scheme might result in a harsher sentence."  Accordingly, we need not address this issue.

which would permit a more severe sentence under the guidelines,' its reasonable estimate of the intended loss will be upheld on appeal." *United States v. Dominguez*, 109 F.3d 675, 676 (11th Cir. 1997) (quoting *United States v. Wilson*, 993 F.2d 214, 218 (11th Cir. 1993)) (citation omitted).

The other circuits to address this issue have held a district court does not clearly err when it uses the full face value of a check to calculate intended loss. In *United States v. Osborne*, 332 F.3d 1307 (10th Cir. 2003), the Tenth Circuit considered a case involving a counterfeit check scheme similar to the one in which Grant participated. The defendants stole checks from the mail and then used a computer program to scan the stolen checks, alter the payee and amount, and print counterfeit checks. *Id.* at 1309. In other words, the defendants utilized the stolen checks as templates from which they could produce counterfeit checks. The district court determined the defendants intended to use the $708,519 face value of seized stolen and counterfeit checks and included this amount in its calculation of the intended loss. *Id.*

On appeal, one of the defendants challenged the district court's intended loss calculation, asserting the "'face amount of the checks at the [coconspirators'] residence ha[d] nothing to do with the amount for which said checks would be counterfeited.'" *Id.* at 1312–13. The Tenth Circuit rejected the defendant's

6

argument, noting (1) expert testimony any check with an account number could potentially be negotiated, (2) the fact all of the checks seized from the coconspirators' residence had account numbers on them, and (3) the uncontroverted fact a single stolen check would be counterfeited multiple times for increased amounts. *Id.* at 1313. Based on this evidence, the Tenth Circuit determined the district court did not clearly err in using the full face value of the seized checks to estimate the intended loss. *Id.*

The Third Circuit has also held a district court does not commit clear error when, in the absence of sufficient evidence to the contrary, it determines the defendant intended to utilize the full face value of worthless checks. *See United States v. Geevers*, 226 F.3d 186, 188 (3d Cir. 2000). In *United States v. Himler*, 355 F.3d 735 (3d Cir. 2004), the Third Circuit clarified the holding in *Geevers*. The defendant in *Himler* was convicted of using two counterfeit checks to purchase a condominium, and the district court included the full face value of the counterfeit checks in its intended loss calculation. *Id.* at 738–39.[4] On appeal, the

---

[4] Grant attempts to differentiate his case from that of the defendants in *Osborne* and *Himler* by pointing out he possessed *photocopies* of corporate checks, as opposed to *actual* corporate checks. Because the photocopies themselves were non-negotiable, he asserts, they cannot be said to reflect the intended loss.

This argument relies on a classic distinction without a difference. Although art gallery curators eschew reproductions of Rembrandt paintings in favor of the originals, counterfeiters need not be so discerning when it comes to reproductions of negotiable instruments. So long as the photocopied checks contain the same routing numbers, business names, and account balance

7

defendant argued the district court "based its [intended loss] finding solely on the face value amount of the forged checks and that, because this Court . . . rejected [in *Geevers*] a *per se* rule that intended loss can be inferred from the face value of the check, the District Court committed an error of law." *Id.* at 741.

The Third Circuit dismissed the defendant's reading of *Geevers*. "What *Geevers* stands for is not only that it is reasonable to infer that a defendant in [the defendant's] position intends the full loss of the face value of his false checks, but also that the matter 'is not to be determined as a question of law, but as one of fact.'" *Id.* (quoting *Geevers*, 226 F.3d at 193). After reviewing the evidence presented against the defendant, the Third Circuit determined the district court did not commit clear error in finding the intended loss included the full face value of the checks. *Id.*[5]

---

information as the original checks, counterfeiters can effectively pursue their criminal craft. Grant admitted his intention to use the photocopies of stolen corporate checks as templates from which to produce counterfeit checks. In the context of his counterfeiting enterprise, we therefore see no difference between using an actual check as a counterfeiting template and using a photocopy of an actual check as a counterfeiting template.

[5] In addition to the Third and Tenth Circuits, at least two other circuits have determined a district court did not clearly err when it included the full face value of a check in calculating a defendant's sentence under the Guidelines. *See United States v. Joetzki*, 952 F.2d 1090, 1096–97 (9th Cir. 1991) (determining the district court did not clearly err by including the full face value of a worthless check in calculating the amount of loss under former § 2F1.1); *United States v. Quertermous*, 946 F.2d 375, 377–78 (5th Cir. 1991) (holding the full face value of stolen checks could be attributed to the defendant as income derived from his crime for purposes of imposing a criminal livelihood sentence enhancement under § 4B1.3); *see also United States v. Haggert*, 980 F.2d 8, 13 (1st Cir. 1992) (determining the district court did not err by including the full face

8

Although this appeal presents an issue of first impression in our circuit, we do not lack analogous case law. In *United States v. Manoocher Nosrati-Shamloo*, the defendant was convicted of stealing mail and using the personal information contained therein to open credit card accounts. 255 F.3d 1290, 1290–91 (11th Cir. 2001). At the sentencing hearing, the Government presented circumstantial evidence indicating the defendant intended to utilize all of the credit available on the cards, and the defendant failed to present countervailing evidence. *Id.* at 1292. The district court calculated an intended loss of $43,000, the amount of the combined credit limits on the cards obtained through the stolen mail. *Id.* at 1291.

On appeal of the district court's intended loss calculation, we determined "once a defendant has gained access to a certain credit line by fraudulently applying for credit cards, a district court does not err in determining the amount of the intended loss as the total line of credit to which Defendant could have access, especially when Defendant presents no evidence that he did not intend to utilize all of the credit available on the cards." *Id.* Moreover, we noted "[a] defendant's intent is often difficult to prove and often must be inferred from circumstantial

---

value of fraudulent sight drafts in calculating the amount of loss under former § 2F1.1). In this case, the district court applied a 12-level enhancement to Grant's sentence under § 2B1.1. *Joetzki* is therefore especially relevant, because former § 2F1.1 was consolidated into § 2B1.1 on November 1, 2001. *See* U.S.S.G. app. C, amend. 617.

evidence." *Id.* at 1292 (citing *United States v. Ethridge*, 948 F.2d 1215, 1217 (11th Cir. 1991); *Hill v. Kemp*, 833 F.2d 927, 930 (11th Cir. 1987)).

In this case, Grant admitted the purpose of the photocopied Personal Escrow Services and Colony Insurance checks was to use them as templates for producing counterfeit checks on his personal computer. Grant also admitted (1) one of his coconspirators opened a bank account using counterfeit checks purported to be drawn on a Professional Escrow Services account, and (2) he had produced or possessed counterfeit checks in order to withdraw funds from a Colony Insurance account. The photocopied Professional Escrow Services and Colony Insurance checks not only provided him with routing numbers and business names, but also information about the companies' account balances. As the Government asserted during the sentencing hearing, "[i]f there's a huge amount in the account, obviously the people who are using those checks and manufacturing the counterfeit versions know they can pass larger checks than if there's only a $3,000 or a $5,000 amount on the check." Additionally, law enforcement officers seized numerous blank counterfeit checks and several boxes of check stock paper from Grant's apartment. All of this evidence circumstantially supports the conclusion Grant intended to utilize the full face value appearing on the photocopies of the Professional Escrow Services and Colony Insurance checks. And as we

10

established in *Manoocher Nosrati-Shamloo*, such circumstantial evidence suffices to support an intended loss determination.

Moreover, like the defendant in *Manoocher Nosrati-Shamloo*, Grant failed to produce evidence tending to show he did not intend to use the full face value of the stolen corporate checks. Indeed, in his supplemental authority brief, Grant's counsel appears to concede his client's inability to present such evidence, stating: "While counsel cannot argue that Mr. Grant would not have created additional counterfeit checks with the same account numbers on them, because he was apprehended, it did not happen." The only countervailing evidence presented was "that the photocopy of the check . . . was months old and presumably the bank on which it was drawn was aware of the possible fraudulent activity with respect to it." Yet, evidence the bank may have discovered Grant's fraudulent activities before he cashed the counterfeit checks has no bearing on the issue of whether he subjectively intended to utilize the checks' full face value. Grant simply fails to proffer any evidence indicating his intent to use less than the full face value of the stolen corporate checks. Considering the principles set forth in *Manoocher Nosrati-Shamloo*, and reviewing the totality of the evidence against Grant, we

11

conclude the district court did not clearly err when it determined Grant intended to utilize the full face value of the stolen corporate checks.[6]

To be clear, we hold when an individual possesses a stolen check, or a photocopy of a stolen check, for the purpose of counterfeiting, the district court does not clearly err when it uses the full face value of that stolen check in making a reasonable calculation of the intended loss. Although a district court cannot equate the full face value of stolen checks with intended loss as a matter of law in every case, it can still find a defendant intended to utilize the full face value of stolen checks. Where the Government presents evidence indicating the defendant intended to utilize the full face value of the checks, and the defendant fails to present countervailing evidence, a district court is especially justified in including the checks' full face value in its intended loss calculation.

IV. CONCLUSION

---

[6] Although *Manoocher Nosrati-Shamloo* dealt with a credit card's full line of credit, and this appeal revolves around a check's full face value, this distinction does not alter our final analysis. True, the face value of a check might exceed the actual funds available; thus, unbeknownst to a counterfeiter, it could be impossible to utilize the check's full face value. Once a thief obtains a credit card, on the other hand, he or she can automatically utilize the card's entire line of credit. However, "'[i]ntended loss' . . . includes intended pecuniary harm that would have been *impossible* or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." U.S.S.G. § 2B1.1 cmt. n.2(A)(ii) (emphasis added). In other words, the latent impossibility of actually utilizing a check's full face value does not automatically negate the counterfeiter's subjective intent to do so. Accordingly, even if a check's face value exceeds the available account balance, a district court need only find the defendant intended to utilize the full face value of the check.

For the foregoing reasons, we affirm the district court's calculation of the $230,009.54 intended loss amount and its application of a 12-level enhancement to Grant's sentence under § 2B1.1(b)(1)(G) of the Guidelines.

AFFIRMED.