[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 22, 2010
JOHN LEY
CLERK

No. 10-11280
Non-Argument Calendar
_____

D.C. Docket No. 5:09-cr-00030-HL-CWH-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD HICKLIN, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(December 22, 2010)

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

Donald Hicklin, Jr. appeals his 60-month sentence imposed after he pled guilty to conspiracy to possess stolen mail and to commit bank fraud. After review, we affirm.

## I. BACKGROUND

### A.     Arrest and Conspiracy

On January 27, 2009, defendant Hicklin and co-defendants Airrik Sanders and Rashad Mackey were arrested after a traffic stop near Jackson, Georgia. In searching their car, police officers found nineteen stolen commercial checks and four counterfeit North Carolina driver's licenses. Two checks had altered payees and a total face amount of $15,005.70. Three checks had altered payees and altered face amounts, totaling $11,219.40. Fourteen checks were unaltered, with a total face amount of $45,436.14. The total value of the nineteen checks was thus $71,661.24.

During the ensuing investigation, defendant Hicklin admitted that he, Sanders, and Mackey participated in a conspiracy led by co-defendant Jonathon Counts to steal checks from businesses in Georgia and North Carolina and to employ homeless persons to negotiate the checks using counterfeit driver's licenses. Defendant Hicklin told investigators that he, Sanders, and Mackey had stolen checks from businesses in the Savannah, Georgia, and Charlotte, North

Carolina areas, while co-defendant Counts stole checks from businesses near Atlanta, Georgia. They did so by removing mail from postal boxes and extracting the checks. Defendant Hicklin's role was to alter the payee on the checks, and in some cases the amount payable also, by using a sharp knife. Sanders and Mackey's role was to drive homeless persons, for whom the defendants had obtained counterfeit driver's licenses, to various banks to cash the checks.

On January 26, 2009, the day before defendant Hicklin's arrest, Counts picked up a man named Dustin Eddie and provided Eddie with an altered stolen check in the amount of $4,949.63. Sanders and Mackey took Eddie to a bank in Athens, Georgia, but left Eddie after they saw police officers there. Eddie cashed the stolen, altered check but was arrested at the bank.

On January 27, 2009, defendant Hicklin, with Sanders and Mackey, were arrested while en route to Ocala, Florida to negotiate the stolen checks. Counts and a homeless man (who was to use the counterfeit driver's licenses in Hicklin's car to cash the checks) were following in another car, but were not stopped by police.

Prior to the instant offense, both Hicklin and Counts were convicted in 2005 in federal court in Tampa, Florida for a similar scheme, in which they stole checks, altered them, and recruited homeless persons to cash them. Hicklin's 30-month

3

imprisonment ended in October 2008. Hicklin was on supervised release at the time of his January 27, 2009 arrest for the instant offense.

## B.    Plea Agreement

On April 23, 2009, a federal grand jury indicted defendant Hicklin, along with Counts, Sanders, and Mackey. The indictment charged Hicklin with conspiracy to possess stolen mail matter and to commit bank fraud, in violation of 18 U.S.C. §§ 371, 1344, and 1708 (Count 1), and 19 counts of unlawful possession of stolen mail matter, in violation of 18 U.S.C. § 1708 (Counts 3-21). Count 2 of the indictment charged Sanders, Mackey, and Counts with bank fraud, in violation of 18 U.S.C. § 1344, for taking Eddie to the bank in Athens, Georgia to try to cash the $4,949.63 stolen check.

On September 3, 2009, defendant Hicklin pled guilty to the conspiracy charge pursuant to a plea agreement. The plea agreement contained a sentence appeal waiver, but permitted Hicklin to appeal his sentence if the district court imposed a sentence that exceeded the advisory guidelines range. In the plea agreement, Hicklin and the government stipulated "that the loss amount for advisory guideline calculations is approximately $16,168.63, and in any event less than $30,000.00." The parties reached the $16,168.63 figure by taking the total altered face values of three checks (i.e., $11,219.40), and adding the $4,949.63

4

face value of the check that the defendants tried to have Eddie cash at the bank in Athens, Georgia.[1]

## C.     Presentence Investigation Report

The presentence investigation report ("PSI") assigned a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2).  The PSI calculated a loss amount of $71,661.24, because that was the total face amount (post-alteration) of the nineteen stolen checks found in defendant Hicklin's car.  The PSI calculated a total offense level of 15, based on: (1) an eight-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the loss was more than $70,000 but not more than $120,000; (2) a two-level increase, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved ten or more victims; (3) a two-level increase, pursuant to U.S.S.G. § 2B1.1(b)(10), because the offense involved the possession of false driver's licenses; and (4) a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  Defendant Hicklin's criminal history category of IV and offense level of 15 yielded an advisory guidelines range of 30 to 37 months' imprisonment.[2]

_____

[1]The parties, however, made a slight mathematical error (they dropped the $.40 from the $11,219.40 figure).  The stipulated loss amount should have been $16,169.03.  Because this arithmetic error does not affect our analysis, we ignore it going forward.

[2]The PSI noted that the plea agreement stipulated to a loss amount of no more than $30,000, which, if adopted by the district court, would yield a total offense level of 12 and an

The PSI stated an above-guidelines sentence may be warranted because Hicklin persisted in a long-term scheme of stealing checks and recruiting homeless persons to cash them. The PSI noted that Hicklin's scheme resulted in his 2005 conviction, that his scheme involved some of the same conspirators, and that Hicklin resumed his scheme promptly after completing his imprisonment. The statutory maximum for Hicklin's instant offense is 60 months' imprisonment. 18 U.S.C. § 371.

Both Hicklin and the government objected that the loss amount should be the $16,168.63 amount stipulated in Hicklin's plea agreement. Hicklin argued that the loss amount was (1) $4,949.63, the amount of the stolen, altered check that Eddie cashed, plus (2) the loss amount intended by the defendants, which was represented by the $11,219 total of the three stolen checks with altered face amounts and payees. Hicklin argued there was "no evidence that Hicklin or any of the other co-defendants altered or intended to pass any of the remaining checks."

Hicklin also objected to the PSI's statement that an upward variance may be warranted. Hicklin's sentencing memorandum requested a "time served" sentence on the grounds that (1) he suffered a difficult childhood, (2) he attempted to start a hauling business after his release from federal custody but the business failed, (3)

_____

advisory guidelines range of 21 to 27 months' imprisonment.

he missed the first year of his newborn child's life, (4) additional imprisonment would not provide him with educational or vocational training, and (5) he faces a significant revocation-of-supervised-release sentence after he serves the term of imprisonment imposed in this case.

**D.    Sentencing**

At sentencing, the government objected to the two-level increase for possessing false driver's licenses because Hicklin possessed only four false licenses, not the five required for the increase under U.S.S.G. § 2B1.1(b)(10)(C)(ii).  The district court sustained the objection.

The parties renewed their objections to the PSI's loss amount.  Hicklin argued for inclusion of only the three checks (totaling $11,219.40) with altered face amounts because the defendants thought that the sixteen other checks with unaltered face amounts "could not be altered and passed" without the defendants being detected.  The sixteen checks (totaling $60,441.84) for which the face amount was not altered "were never intended to be passed, never intended to be altered and therefore should not be applied in the amount of loss figure."  The district court overruled the objection and found that the loss amount was $71,661.24, the total post-alteration face amount of the nineteen stolen checks found in Hicklin's car.

Hicklin asked for a within-guideline sentence, reiterating it adequately addressed the objectives of sentencing.

The district court reviewed Hicklin's criminal history and performed its advisory guideline calculations, applying a base offense level of 6, with an eight-level increase based on the loss amount, a two-level increase based on the number of victims, and a three-level reduction for acceptance of responsibility. The district court found Hicklin's resulting total offense level was 13 and his criminal history category was IV, which yielded an advisory guidelines range of 24 to 30 months' imprisonment. The district court expressly stated that it considered the arguments in Hicklin's sentencing memorandum and the 18 U.S.C. § 3553(a) factors. The district court sentenced Hicklin to the statutory maximum of 60 months' imprisonment, stating that under the circumstances an upward variance was warranted:

> I find that an upward variance in this case is warranted based on the factors at 18 United States Code, Section 3553(a)(1). The Court has carefully reviewed the prior record of this defendant and finds that there is a need for the sentence imposed to reflect the seriousness of this offense, promote the respect for the law, and provide just punishment for the offense. There also exists a need to afford adequate deterrents to further criminal conduct and protect the public from further crimes by this defendant.
>
> The Court notes that you have several prior convictions which were not assessed criminal history points, including a simple assault conviction at age 16. You have prior charges similar to this offense, of

8

the offense of this case that were consolidated for sentencing purpose and therefore did not receive criminal history points.

>  You were also previously sentenced on similar federal charges which involved conduct that began in 2002. This prior scheme, which also involved [the codefendant] Counts, was carried out in the same manner as the offense in this case and was interrupted only by your prior term of federal incarceration.

>  For these reasons, the Court commits you to the Bureau of Prisons for a period of 60 months.

Hicklin filed this appeal.

The government later moved the district court, pursuant to Federal Rule of Criminal Procedure 35(b), to reduce Hicklin's sentence to reflect Hicklin's subsequent substantial assistance. The district court granted the government's motion and reduced Hicklin's sentence to 50 months' imprisonment.

## II. DISCUSSION

Hicklin argues his sentence is procedurally and substantively unreasonable. We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the

chosen sentence.  Id.  Then, we look at whether the sentence is substantively unreasonable under the totality of the circumstances.  Id. Hicklin bears the burden to show his sentence is unreasonable in light of the record and the § 3553(a) factors.[3]  United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

## A.    Reading the PSI

Hicklin contends the district court committed procedural error by failing to verify that Hicklin read the PSI.  Because Hicklin did not raise this issue in the district court, we review it for plain error.  United States v. Ternus, 598 F.3d 1251, 1254 (11th Cir. 2010).  To establish plain error, Hicklin must show "there was an (1) error, (2) that is plain and (3) that affects substantial rights.  If all three conditions are met, we may then exercise discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Bacon, 598 F.3d 772, 777 (11th Cir. 2010) (quotation marks, brackets, and ellipsis omitted).

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

Federal Rule of Criminal Procedure 32(i)(1)(A) states that, at sentencing, the district court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A). The sentencing transcript reveals that the district court did not ask Hicklin or his counsel whether they read and discussed the PSI.

Assuming this was plain error,[4] Hicklin has not shown that it affected his substantial rights. To show an error affected his substantial rights, Hicklin must demonstrate that but for the error, there was a reasonable probability of a different result at sentencing. United States v. Underwood, 446 F.3d 1340, 1343-44 (11th Cir. 2006). Hicklin has not done so here. Hicklin's counsel raised several objections to the PSI's advisory guidelines calculations, all of which the district court expressly addressed at sentencing. In fact, the district court sustained one objection to the PSI's calculations – the objection to the two-level increase based on possession of false driver's licenses – which was raised by the government at

---

[4]This Court, in applying an earlier version of Rule 32, found nothing in the rule that required the district court to pose specific questions, such as whether the defendant and counsel had read the PSI. United States v. Aleman, 832 F.2d 142, 144 n.6 (11th Cir. 1987). Aleman cited with approval two opinions from other circuits concluding that a district court need not "personally address the defendant to determine whether he has read the PSI and discussed it with counsel." Id. at 144 (citing United States v. Mays, 798 F.2d 78, 80 (3d Cir. 1986); United States v. Sambino, 799 F.2d 16, 17 (2d Cir. 1985)). In Aleman, however, the district court did expressly ask the parties whether there were "any problems with the presentence report." Id. The district court did nothing similar here.

the suggestion of Hicklin's counsel. Hicklin has not shown any additional meritorious objections his counsel should have made but did not make.

Moreover, the district court addressed Hicklin personally after pronouncing sentence to give Hicklin an opportunity to ask questions or object, and Hicklin said he had no questions or objections. Hicklin articulates, and we have found, no specific prejudice or impairment of his substantial rights that resulted from the district court's failure to ask if Hicklin and his counsel read and discussed the PSI. Alternatively, we decline to notice any forfeited error as the error did not, in any event, seriously affect the fairness, integrity, or public reputation of Hicklin's sentencing proceeding.

## B.    Loss Amount Calculation

Hicklin argues the district court's finding that the loss amount was equal to the $71,661.24 total post-alteration face value of the nineteen stolen checks recovered from Hicklin's car, instead of the $16,168.63 stipulated loss amount, was clearly erroneous.[5] Hicklin argues the district court's loss amount finding was speculative and ignored Hicklin's contention that certain stolen checks were

---

[5]The parties agree that the district court was not bound by the stipulation in the plea agreement. See U.S.S.G. § 6B1.4(d), p.s. (stating that a district court is not bound by a factual stipulation in a plea agreement and may determine the facts relevant to sentencing).

removed from the loss calculation because the defendants never intended to cash them.

For theft crimes, the sentencing guidelines increase a defendant's offense level based on the loss amount the defendant caused or intended. A four-level increase applies if the loss amount is more than $10,000 but not more than $30,000, while an eight-level increase applies if the loss amount is more than $70,000 but not more than $120,000. U.S.S.G. § 2B1.1(b)(1)(C) & (E). The district court need only make a reasonable estimate of the loss amount, and the court's determination is entitled to deference because the "sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1 cmt. n.3(C); see United States v. Dominguez, 109 F.3d 675, 676 (11th Cir. 1997) (stating that a district court's "reasonable estimate of the intended loss will be upheld on appeal"). This Court reviews the loss amount determination for clear error. United States v. Grant, 431 F.3d 760, 762 (11th Cir. 2005).

The loss amount is the greater of "actual loss" or "intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." Id. § 2B1.1 cmt. n.3(A)(i). "Intended loss" is "the pecuniary harm that was intended to result from the offense." Id. § 2B1.1 cmt.

13

n.3(A)(ii)(I). In <u>Grant</u>, a check counterfeiting case, this Court concluded that the district court did not commit clear error when it used the total face value of the stolen checks to calculate the loss amount:

> [W]e hold when an individual possesses a stolen check, or a photocopy of a stolen check, for the purpose of counterfeiting, the district court does not clearly err when it uses the full face value of that stolen check in making a reasonable calculation of the intended loss. Although a district court cannot equate the full face value of stolen checks with intended loss as a matter of law in every case, it can still find a defendant intended to utilize the full face value of stolen checks. Where the Government presents evidence indicating the defendant intended to utilize the full face value of the checks, and the defendant fails to present countervailing evidence, a district court is especially justified in including the checks' full face value in its intended loss calculation.

<u>Grant</u>, 431 F.3d at 765.

Here, the district court's loss amount finding was not clearly erroneous. It was not unreasonable for the district court to conclude that the defendants, in stealing the nineteen checks and then bringing all nineteen with them on their trip to Florida to cash stolen checks, intended to cash all of the stolen checks that were found in their car for at least their total face value.[6] Indeed, two of the checks excluded from the parties' stipulated loss calculation actually had altered payees, indicating strongly that the defendants planned to negotiate more than the

---

[6]Notably, the three times the defendants altered the amount payable on the checks, they <u>increased</u> it.

$16,168.63 claimed by Hicklin.  The district court reasonably calculated the amount of intended loss as the total post-alteration face amount of the nineteen checks found in the defendants' car.  Thus, the district court committed no error, clear or otherwise, in calculating the loss amount attributable to Hicklin under U.S.S.G. § 2B1.1(b)(1).

## C.    Substantive Reasonableness

Hicklin argues the district court's above-guideline 60-month sentence (later reduced to 50 months) is substantively unreasonable.[7]  "If, after correctly calculating the guidelines range, a district court decides that a sentence outside that range is appropriate, it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)).  Likewise, although "[s]entences outside the guidelines are not presumed to be unreasonable, . . . we may take the extent of any variance into our calculus."  United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct.

---

[7]We reject Hicklin's arguments that the sentence imposed was procedurally unreasonable because the district court allegedly ignored Hicklin's mitigating evidence and his arguments for a time-served sentence, failed to adequately explain the sentence imposed, and did not sufficiently consider whether a lower sentence would have adequately protected society.  Our review of the record reveals these contentions wholly lack merit.

2847 (2009). However, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51, 128 S. Ct. at 597. "[T]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." Williams, 526 F.3d at 1322 (quotation marks omitted). This Court should reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

Hicklin has not met his burden of showing that his sentence was substantively unreasonable. As the district court noted, Hicklin had a seven-year history of stealing and forging checks, served a federal prison sentence from 2006 to 2008 for a nearly identical check theft scheme (with co-defendant Counts), and resumed the scheme almost immediately upon his release from prison in October 2008. The district court concluded an upward variance was necessary, among other reasons, to promote respect for the law, to deter Hicklin from further criminal conduct, and to protect the public from further crimes by Hicklin. Under the circumstances, we cannot say that the district court's decision to vary upward

16

from the advisory guidelines range and impose a 60-month sentence was substantively unreasonable.

**AFFIRMED.**