[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2011
JOHN LEY
CLERK

No. 10-15389
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cr-00133-CG-B-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHONTAE KYNARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 24, 2011)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Shontae Kynard appeals her sentence of 32 months' imprisonment and an order to pay $14,800 in restitution, which was imposed after she pleaded guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. After thorough review, we reverse Kynard's sentence and remand for re-sentencing.

I.

In June 2010, a grand jury sitting in the Southern District of Alabama returned a two-count indictment charging Kynard and a co-defendant, Tashara Evans, with bank fraud and aggravated identity theft. At Kynard's change of plea hearing, the government asserted that it would be able to prove the following facts if the case proceeded to trial. In January 2009, Greg Hodges, a special agent with the United States Secret Service, received information from local law enforcement that illegal activities were taking place at the local branch of H&R Block Bank. Special Agent Hodges contacted the bank's manager and was informed that, while Kynard and Evans were employed at the bank, "Emerald Advance" debit cards had been fraudulently obtained.[1] The manager provided Hodges with police reports and still photographs of two unknown females using fraudulently obtained

_____

[1] H&R Block issues Emerald Advance debit cards to qualifying taxpayers who have their tax returns prepared at H&R Block. The card contains the taxpayer's anticipated tax refund and can be used to make ATM withdrawals and other purchases.

2

Emerald Advance cards at a local retailer. The manager also gave Hodges video footage from a local bank showing Kynard withdrawing $550 using a fraudulently obtained card issued in the name of Eric Wagner.

Kynard was interviewed and initially denied engaging in any criminal activity. She also denied having any knowledge of Evans' illegal activities. After being shown the video footage, however, Kynard admitted to making the withdrawal and explained that after Evans completed the application, she added Wagner's name and social security number. Kynard also admitted to inflating the income of friends in exchange for $25 so that they could qualify for an Emerald Advance debit card. The district court concluded that Kynard's guilty plea was supported by a sufficient evidentiary basis and accepted her guilty plea.

Kynard's presentence investigation report ("PSI") assigned a base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a)(1). The PSI determined that the amount of loss suffered by the victim of the offense, H&R Block Bank, was $14,800 and increased the base offense level by four levels. See U.S.S.G. § 2B1.1(b)(1)(C). The PSI also applied a two-level enhancment for "[a]buse of a position of trust," but reduced it by two levels for acceptance of responsibility, for a total offense level of 11. Based on a total offense level of 11 and a criminal

history category of I, Kynard's advisory guidelines range was 8 to 14 months' imprisonment.[2]

Kynard objected to certain factual allegations in the PSI. Specifically, Kynard denied telling her co-defendant, Evans, that "she was going to show [her] how to make money." She also denied picking names from H&R Block's computer system in which to issue the fraudulent Emerald Advance cards. However, Kynard did not object to the factual allegation that Evans approached her in the middle of December 2008 and stated that she needed "some cash." When Kynard asked Evans how she was going to get the money, Evans replied: "You know how." Kynard also did not object to the allegation that in late December 2008, Evans went to Kynard's home and asked for the key to the manger's office, telling Kynard that a client was coming to the bank to sign an application. Kynard gave Evans the key, which she returned within about 20 minutes.

Kynard also objected to the loss amount calculated in the PSI, maintaining that the loss attributable to her conduct was only $550—the amount withdrawn from the Emerald Advance card in Wagner's name.

---

[2] Aggravated identity theft, which was charged in Count 2 of the indictment, carries a statutory mandatory consecutive two-year sentence. See 18 U.S.C. § 1028A(a)(1).

At sentencing, Kynard renewed her objection to the loss calculation in the PSI, again taking the position that the loss attributable to her conduct was only $550. In response, the government argued that Kynard was responsible for $14,800, the total amount of loss resulting from Kynard and Evans' combined conduct. The government argued that Kynard should be held responsible for any loss attributable to Evans because Kynard had knowledge that Evans was engaging in criminal conduct in December 2008 and provided Evans with a key to the manager's office, where client information was stored. The government also noted that Kynard admitted to providing assistance to Evans with respect to the Wagner card and conceded that there might be other video footage of her using another Emerald Advance debit card obtained from Evans.

With respect to the amount of loss attributable to Kynard, the district court observed:

> [T]he problem I have here is that I've got from the presentence report, and I'm assuming these were taken from the investigative agents' work, that Ms. Kynard said Ms. Evans said she was going to steal the money or get money and yet Ms. Evans says that Ms. Kynard was the one whose idea this was and who showed her how to do it.
>
> And in terms of coming up with a restitution amount, you know, I have no way to know which of these women or either of them are being truthful in this regard. And under the circumstances, I don't think that I can do anything but to hold both of them fully responsible for restitution of the amount of loss. Because clearly they each were

5

responsible for at least some of it, and it appears that each of them blames the other for the scheme.

Accordingly, the district court concluded that the amount of loss was $14,800 and applied the four level enhancement in U.S.S.G. § 2B1.1(b)(1)(C). After overruling the rest of Kynard's objections to the PSI, the district court sentenced Kynard to 8 months' imprisonment on the bank fraud count and 24 months' imprisonment on the aggravated identity theft count, with the sentences to run consecutively. The district court also ordered Kynard to pay restitution in the amount of $14,800 to H&R Block Bank. On appeal, Kynard challenges her sentence and the district court's restitution order.

II.

Kynard contends that the district court erred in determining that the amount of loss attributable to her is $14,800. "We review the calculation of losses by the district court for clear error." United States v. Naranjo, 634 F.3d 1198, 1206 (11th Cir. 2011). For certain crimes, such as fraud, the Sentencing Guidelines require an increased offense level based on the amount of the loss. See U.S.S.G. § 2B1.1(b). Offenses involving more than $10,000 but less than $30,000 result in an offense level increase of 4 points, while offenses resulting in a loss of $5,000 or less

6

receive no increase.  Id. § 2B1.1(b)(1)(A), (C).  Under the Guidelines, the loss

amount is "the greater of actual loss or intended loss."  Id. § 2B1.1, cmt. n.3(a).

"In calculating the amount of loss, the district court need only make a

reasonable estimate of the loss."  United States v. Grant, 431 F.3d 760, 762 (11th

Cir. 2005) (quotation marks omitted).  However, "the district court must not

speculate concerning the existence of a fact which would permit a more severe

sentence under the guidelines."  United States v. Dominquez, 109 F.3d 675, 676

(11th Cir. 1997) (quotation marks omitted).  The district court has an obligation to

"make factual findings sufficient to support the government's claim of loss based

on a preponderance of the evidence, when the defendant challenges that claim."

United States v. Patterson, 595 F.3d 1324, 1327 (11th Cir. 2010); see also United

States v. Hamaker, 455 F.3d 1316, 1338 (11th Cir. 2006) ("The district court's

factual findings for purposes of sentencing may be based on, among other things,

evidence heard during trial, undisputed statements in the PSI, or evidence

presented during the sentencing hearing." (quotation marks omitted)); United

States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) (explaining that factual

findings must be supported by "reliable and specific evidence." (quotation marks

omitted)).

Kynard argues that the loss amount should have been limited to $550—the amount of money that she fraudulently obtained using an Emerald Advance debit card issued in Eric Wagner's name. She maintains that the government failed to present "reliable and specific evidence" establishing, by a preponderance of the evidence, that she was responsible for $14,800, the total amount of loss resulting from Kynard and Evans' combined conduct. Moreover, Kynard argues that the district court failed to make sufficient factual findings regarding the scope of her criminal conduct to support the government's claim of loss.

The district court clearly erred in its finding regarding Kynard's amount of loss. At sentencing, Kynard challenged the loss amount in the PSI, triggering the government's obligation to present "reliable and specific evidence" in support of the loss calculation as well as the district court's obligation to make appropriate findings of fact. See Patterson, 595 F.3d at 1327; Sepulveda, 115 F.3d at 890. The government presented no evidence, instead making its own proffer regarding statements made by Kynard and Evans to Special Agent Hodges. See United States v. Bernardine, 73 F.3d 1078, 1081–82 (11th Cir. 1996) (concluding that government failed to carry its burden of presenting "reliable and specific" evidence where the government proffered that it could produce witnesses to establish facts necessary to support a sentencing enhancement, but never produced

those witnesses); United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992) (recognizing that "statements of counsel are not evidence").  The government failed to carry its burden.

Moreover, "in calculating the amount of loss, the Guidelines require a district court to take into account 'not merely the charged conduct, but rather all 'relevant conduct', in calculating a defendant's offense level.'"  United States v. Foley, 508 F.3d 627, 633 (11th Cir. 2007) (quoting Hamaker, 455 F.3d at 1336).  Relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).  However, before a district court may hold a defendant liable for the acts of others, "the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant."  United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003).  In this case, the district court did not make particularized findings as to the scope of any agreement between Kynard and Evans to fraudulently obtain Emerald Advance debit cards.  Rather, the district court noted only that each of them was responsible for at least part of the loss and that there were competing accounts of the facts.  Under these circumstances, we conclude that the district court clearly erred in calculating the loss amount.  See United States v. Medina, 485 F.3d 1291, 1304–05 (11th Cir.

9

2007) (finding clear error where district court failed to make specific factual findings upon which to base the loss amounts attributable to each individual defendant); United States v. Cabrera, 172 F.3d 1287, 1294 (11th Cir. 1999) (concluding that insufficient evidence supported the amount of loss attributed to the defendant).

## III.

Kynard also challenges the district court's restitution order. We review de novo the legality of a restitution order, but review factual findings underlying a restitution order for clear error. United States v. Hasson, 333 F.3d 1264, 1275 (11th Cir. 2003). Under the Mandatory Victims Restitution Act, a person convicted of any crime against property, including any offense committed by fraud or deceit, is required to make full restitution to the identifible victim of her offense. 18 U.S.C. § 3663A(c)(1)(A)(ii), (c)(1)(B). The restitution order must "compensate the full amount of [the] victim's losses." Patterson, 595 F.3d at 1327; see also United States v. Huff, 609 F.3d 1240, 1247 (explaining that "the amount of loss [used for sentencing] does not necessarily equal the amount of restitution to be paid because a defendant's culpability will not always equal the victim's injury" (quotation marks omitted)); United States v. Liss, 265 F.3d 1220, 1231 (11th Cir. 2001) ("An award of restitution must be based on the amount of

loss actually caused by the defendant's conduct"). "Disputes over the amount of restitution are to be resolved by a preponderance of the evidence." United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008) (quotation marks omitted). The government has "[t]he burden of demonstrating the amount of loss sustained by a victim as a result of the offense." Haason, 333 F.3d at 1276 n.14 (quotation marks omitted); see also Liss, 265 F.3d at 1231–32.

The district court ordered Kynard to pay $14,800 in restitution—the same amount as the loss amount the district court calculated for purposes of Kynard's offense level. The district court explained that it was holding Kynard responsible for the full amount of H&R Block Bank's loss because she was responsible for at least some of it and Kynard and Evans blamed each other for the scheme. "A restitution award must be based on the amount of loss actually caused by the defendant's conduct." Huff, 609 F.3d at 1247 (quotation marks omitted). While the government established that H&R Block Bank, the victim of the offense, suffered a total loss of $14,800, the government failed to prove that Kynard's conduct caused that loss. As explained above, the government did not present specific and reliable evidence establishing the existence of an agreement between Kynard and Evans to defraud the bank. Without that showing, the district court's restitution order was clearly erroneous.

11

For these reasons, we reverse Kynard's sentence and remand for re-sentencing.

REVERSED AND REMANDED.